UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------
In re
    PAUL M. O'LEARY
    MARY B. O'LEARY                            BK 15-10832 CLB

                          Debtors                   DECISION & ORDER
-------------------------------------------------

MARK J. SCHLANT, AS TRUSTEE OF
PAUL M. O'LEARY and MARY B. O'LEARY

                        Plaintiff                   AP 17-01018 CLB

    v.

PARKVIEW HEALTH SERVICES OF NEW YORK, LLC,
PARKVIEW HEALTH SERVICES, LLC and
DOE CORPORATION, d/b/a PARKVIEW HEALTH SERVICES

                        Defendants
-------------------------------------------------

                Mark J. Schlant, Esq.
                Zdarsky, Sawicki & Agostinelli LLP
                1600 Main Place Tower
                350 Main Street
                Buffalo, New York 14202
                Attorney for Plaintiff

                Steven W. Wells, Esq.
                Hodgson Russ LLP
                The Guaranty Building
                140 Pearl Street, Suite 100
                Buffalo, New York 14202
                Attorney for Defendants

Bucki, Chief U.S.B.J., W.D.N.Y.

    On cross motions for summary judgment, the parties to this adversary proceeding contest the liability of an entity that acquired the assets of the debtor's former employer pursuant to a secured creditor's sale under Article 9 of the Uniform Commercial Code. The central issue is whether a purchaser of property under U.C.C. § 9-610 can be held responsible for the unsecured debts of the prior owner.

Kevin and Robert O'Leary were the owners of Parkview Health Services of New York, LLC ("Parkview New York"), a limited liability company that operated a long-term care pharmacy at 1770 Colvin Boulevard in the City of Buffalo. By the fall of 2014, Parkview New York was experiencing financial problems. In particular, it defaulted on obligations to two secured creditors: Stonehenge Capital Fund New York, LLC, as agent for certain investors; and AmerisourceBergen Drug Corp. Together, these creditors held security interests in all or substantially all of the tangible and intangible assets of Parkview New York. As of December 19, 2014, Parkview New York owed to Stonehenge the approximate sum of $5,352,359, and to AmerisourceBergen the approximate sum of $4,185,750.30. Kevin O'Leary, Janet O'Leary (Kevin's wife), and Robert O'Leary had personally guaranteed the payment of these obligations.

Paul M. O'Leary is a sibling of Kevin and Robert O'Leary and was an employee of the limited liability company that his brothers owned. The complaint alleges that from November 8 through December 12 of 2014, Paul and his wife Mary used their personal credit to pay for inventory that was then delivered to the pharmacy at 1770 Colvin Boulevard. Although Paul and Mary received some partial indemnification, the trustee calculated that they had a continuing reimbursement claim in the amount of $294,029.84.

In documents dated as of December 19, 2014, Parkview New York and Kevin, Janet and Robert O'Leary reached a settlement with Stonehenge and AmerisourceBergen. Parkview New York voluntarily surrendered the collateral that secured its obligations. With the consent of the guarantors, the secured creditors then sold these assets to Parkview Health Services, LLC, a limited liability company organized under Florida law ("Parkview Florida"). The parties have stipulated that Parkview Florida was formed by The Anderson Group, LLC, an entity whose business includes the acquisition of distressed

companies. As consideration for the sale, Parkview Florida paid $1,525,000 to Stonehenge and the further sum of $1,175,000 to AmerisourceBergen. Stonehenge and AmerisourceBergen then released all of the outstanding personal guarantees given by members of the O'Leary family. Kevin and Robert agreed to cooperate with the secured creditors and with Parkview Florida "in accomplishing the purposes set forth" in the agreements. The owners further promised to cause themselves and their brother Paul to enter into employment agreements with the purchaser.

Parkview Florida consummated its purchase of the assets of Parkview New York as of December 19, 2014. After the sale, Parkview Florida continued to employ essentially all of the same staff and to operate the same type of business at the same location and with the same fixed assets as Parkview New York. To this day, Parkview Florida uses the same telephone number, the same email address, the same trade name and the same logo.

Paul and Mary O'Leary filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on April 23, 2015. In schedules filed with their petition, Mr. and Mrs. O'Leary acknowledged unsecured debt in the amount of $417,476.10. Included in this sum were various obligations that the debtors described as "business revolving credit," in the combined amount of $326,122.43. Meanwhile, in their schedule of personal property, the debtors list a claim against Parkview New York for $550,000, but indicate a belief that this debt is uncollectible.

On April 21, 2017, the Chapter 7 trustee initiated the present adversary proceeding against Parkview New York and Parkview Florida, for the purpose of recovering advances that the debtors made between November 8 and December 12 of 2014 in the amount of $294,029.84. With regard to Parkview New York, the trustee asserts a contract claim for reimbursement. With regard to Parkview Florida, the complaint asserts a claim for

successor liability, based on an allegation that the business of Parkview Florida is a mere continuation of the business of Parkview New York. In response, Parkview New York and Parkview Florida filed a joint answer denying liability and asserting the absence of any commonality of ownership between these two defendants.

Subsequent to commencement of the present adversary proceeding, the trustee recovered $27,043.09 from entities to whom Paul and Mary O'Leary had made payment. Consequently, the trustee has reduced his claim against the current defendants to $266,986.75. The parties have now cross-moved for summary judgment and have executed a stipulation regarding various undisputed facts.

## Discussion

A comprehensive stipulation can serve as a statement that the parties have identified no outstanding factual disputes. In the present instance, however, the stipulation makes no such assertion, as this submission fails to address various key issues. For example, the stipulation does not speak to the calculation of advances not reimbursed, even though the defendants' answer disputes this amount. We therefore treat the current motions as requests for summary judgment on the issue of liability only. Because undisputed facts establish an obligation by Parkview New York to reimburse Mr. and Mrs. O'Leary, the Court will grant the trustee's motion against that defendant on the subject of liability. The parties agree, however, that Parkview New York is today a mere shell without assets. Accordingly, argument has focused on whether liability extends also to Parkview Florida. As to this defendant, for the reasons stated hereafter, the stipulated facts are insufficient to support either motion for summary judgment.

Without some contrary agreement, a purchaser of assets generally assumes no liability for the obligations of the prior owner. In the present instance, Parkview Florida

acquired the assets of Parkview New York by reason of a sale that the secured creditors conducted under the authority of N.Y.U.C.C. § 9-610 (McKinney 2002). The parties have stipulated that notice of the sale was given to all necessary parties, that Parkview New York consented to the sale, and that Parkview Florida thereby acquired the collateral "free and clear of all liens and encumbrances." Absent some basis to pierce the veil of its separate status as a limited liability company, therefore, Parkview Florida has no liability for the separate obligations of a prior owner.

New York law imposes successor liability under circumstances that include those that the Court of Appeals summarized in *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 245 (1983):

> "A corporation may be liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations."

The trustee argues that Parkview Florida is essentially a continuation of Parkview New York and should therefore be held liable for the later's obligations. Initially, we note that the above quoted discussion addressed the issue of liability in tort and not a contractual claim for reimbursement. More fundamentally, however, the concept of successor liability involves the imposition of the obligations of a predecessor. Here, Parkview Florida is the successor not of Parkview New York, but to the rights and interests of the secured creditors. Parkview Florida acquired nothing from Parkview New York. The rights of the secured creditors will therefore limit and define the interest that the trustee now seeks to assert.

After default, Stonehenge and AmerisourceBergen exercised their rights under U.C.C. § 9-610 to sell all of the collateral that secured their loans. Pursuant to that sale, Parkview Florida acquired tangible and intangible assets, but without any formal

agreement to satisfy unsecured creditors like Paul and Mary O'Leary. Consequently, Parkview Florida correctly contends that the continuation of a pre-existing business will not generally result in an assumption of contractual obligations. In very special situations, however, an exception can arise where the conduct of the surviving entity establishes an implied contract whose enforcement is necessary in order to avoid unjust enrichment. *See Ninth Dist. Production Credit Ass'n v. Ed Duggan, Inc.*, 821 P.2d 788 (Colo. 1991).

Writing as a judge on the Court of Appeals for the Second Circuit, Justice Sonia Sotomayor described the requirements for a claim for unjust enrichment:

> "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution. The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'"

*Kaye v. Grossman*, 202 F.3d 611, 616 (2000)(citations deleted). In the present instance, Paul and Mary O'Leary purchased inventory that Parkview New York may have needed to survive until Parkview Florida could complete its acquisition. These purchases may also have augmented the inventory that Parkview Florida was undertaking to acquire. In any event, the transactions benefitted Parkview Florida at the expense of Paul and Mary O'Leary. The remaining question is whether equity and good conscience require restitution.

The asset purchase agreement between the secured creditors and Parkview Florida was dated "*as of* December 19, 2014" (emphasis added). On its face, therefore, the document does not indicate the date of execution and the stated date does not necessarily represent the beginning of the purchaser's involvement with the process of acquisition. Rather, the parties have stipulated that Parkview Florida was created "for the purpose of acquiring the assets" of Parkview New York. In its answer, the defendants

admit the trustee's allegation that Parkview Florida was formed on or about November 3, 2014. Notably, the trustee's complaint seeks reimbursement only for advances by Paul and Mary O'Leary during the period from November 8 to December 12 of 2014, at a time after Parkview Florida had been established for the purpose of acquiring the assets of Parkview New York.

On behalf of Parkview New York, Paul and Mary O'Leary purchased inventory during the same period of time in which Parkview Florida was taking steps to acquire the business. Except for the creditors who financed the purchases, these activities inured to the benefit of all participants: Parkview Florida acquired a business; the secured creditors maximized the liquidation value of their collateral; various relatives received forgiveness of personal guarantees; Paul O'Leary and his brothers received the benefit of future employment. These facts suggest the possibility of collusion, but they are insufficient either to prove or to reject its occurrence. Open questions remain. For example, at the time when the inventory was purchased, did Paul and Mary O'Leary know about plans to sell the business's assets to Parkview Florida? Did Parkview Florida or its parent request or encourage the acquisition of the additional inventory? Was the purchase price for the business adjusted to reflect the inventory purchases? Was the timing of inventory purchases a mere coincidence, or did the parties intend to benefit themselves at the expense of creditors?

The Uniform Commercial Code addresses the rights of a transferee of collateral pursuant to a secured creditor's sale:

> "A secured party's disposition of collateral after default: (1) transfers to a transferee for value all of the debtor's rights in the collateral; (2) discharges the security interest under which the disposition is made; and (3) discharges any subordinate security lien other than liens created under any law of this state that are not to be discharged."

N.Y.U.C.C. § 9-617(a) (McKinney 2002). Parkview Florida argues that its purchase must surely extinguish unsecured claims, particularly in light of the fact that the sale even discharges subordinate liens. What the defendant overlooks, however, is the limitation contained in U.C.C. § 9-617(b), namely that only "a transferee that acts in good faith takes free of the rights and interests described in subsection (a)." Such good faith requires an absence of collusion. Whether collusion here occurred is essentially the same open question that we must resolve for a finding of unjust enrichment. Under the facts of this case, do equity and good conscience require restitution?

Courts respond cautiously to any request to override the rights of secured creditors and of those whose interests derive therefrom. *See Knox v. Phoenix Leasing, Inc.*, 29 Cal. App. 4th 1357, 1363 (Ct. of Appeal, 1st Dist. 1994). Until the intent of the parties is more clearly established, we are unable to grant the trustee's motion for summary judgment with regard to his claim against Parkview Florida. On the other hand, the stipulation does not preclude the essential elements of the cause of action. Hence, we are similarly unable to grant summary judgment to the defendants.

For the reasons stated herein, the Court grants summary judgment to the trustee against Parkview New York as to liability but not as to the amount of damages. The cross motions of the trustee and Parkview Florida for summary judgment as against each other are denied. By separate notice, the Court will schedule a further pretrial conference to arrange such further proceedings as may be needed to resolve the adversary proceeding.

So ordered.

Dated: March 8, 2019  
        Buffalo, New York

/s/ Carl L. Bucki  
_____  
Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.